IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTINA L.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 3:24-cv-00055-YY

OPINION & ORDER

YOU, Magistrate Judge.

Plaintiff Christina L. seeks judicial review of the Social Security Commissioner ("Commissioner")'s final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on October 28, 2019, alleging a disability onset date of August 20, 2018. Tr. 18. The Commissioner denied plaintiff's claim initially, and on reconsideration. Tr. 94-103. Plaintiff filed a written request for a hearing, and a hearing was held

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

before Administrative Law Judge Richard Geib in September 2022. Tr. 36-63. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–35. The Appeals Council denied plaintiff's request for review on November 15, 2023. Tr. 1–7. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 20, 2018. Tr. 20. At step two, the ALJ found plaintiff had the following severe medically determinable impairments: carpal tunnel syndrome, cervical degenerative joint disease/degenerative disc disease status post cervical spine surgery in 2019, a thoracic spine condition, a right rib injury, and obesity. Tr. 20. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. The ALJ concluded that plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl and can occasionally reach overhead bilaterally. She can frequently handle and finger bilaterally. She can have no exposure to work hazards, such as dangerous moving machinery and unprotected heights.

Tr. 24.

At step four, the ALJ determined that plaintiff was capable of performing past relevant work as a housekeeping cleaner. Tr. 29. Alternatively, at step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as small parts assembler, cafeteria attendant, and marking clerk. Tr. 30. The ALJ therefore found plaintiff was not disabled. Tr. 31.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to identify her headaches as a medically determinable impairment at step two, and (2) failing to provide clear and convincing reasons to discount her headache-related symptom testimony. Pl. Br., ECF 9.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Id.* A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 416.921. "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921.

An impairment is "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Social Security Ruling (SSR)* 85-28. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing S.S.R. 85-28) (quoting *Smolen*, 80 F.3d at 1290). An ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity" at step two. *Smolen*, 80 F.3d at 1290; *see also* 20 C.F.R. 416.929(d) ("[W]e consider

your symptoms, such as pain, to evaluate whether you have a severe physical or mental impairment(s), and at each of the remaining steps in the process.").

The ALJ observed that plaintiff claimed disability in part because of her cluster headaches. Tr. 26. The ALJ did not include headaches in the list of medically determinable impairments, and offered no explanation as to why plaintiff's headaches did not pass the de minimis screening at step two. Tr. 20. Instead, the only discussion regarding plaintiff's headaches is found in the portion of the ALJ's decision in which he assesses plaintiff's subjective statements for purposes of fashioning the RFC. Tr. 26. In that context, the ALJ found that plaintiff's "allegations of disabling cluster headaches is not consistent" with the record, and noted that the "State agency doctors, who reviewed the entire record, did not find headache to be [a] medically determinable impairment." Tr. 27.

Plaintiff argues the ALJ "erred by misconstruing or mischaracterizing the evidence received from the agency physicians" and improperly "conflated" their opinions "as one consistent opinion." Pl. Br. 4. Plaintiff acknowledges that Dr. Susan Moner, who conducted the initial assessment, indicated that "records don't show a history of . . . migraines." *Id.* (citing Tr. 68). Plaintiff argues that "more importantly, however," on reconsideration, Dr. M. Fountain "provided a wholly different assessment of [plaintiff's] headaches," indicating:

> H/AS [i.e., headaches] (diagnosed as cluster and migraines approximately 1-2 monthly) . . . Diagnoses of FMS, CS-TS DDD/DJD, H/AS, B/L CTS [i.e., fibromyalgia syndrome, cervical spine-thoracic spine degenerative disc disease/degenerative joint disease, headaches, bilateral carpal tunnel syndrome], and plantar fasciitis were documented. Worsening of the [medically determinable impairments at recon[sideration] review was alleged however were not established.

Tr. 83 (capitalization omitted). From this, plaintiff argues that Dr. Fountain confirmed her headaches were documented and classified them as a medically determinable impairment, along

5 – OPINION & ORDER

with other impairments that the ALJ found were severe. Pl. Br. 5. But, as the Commissioner correctly points out, Dr. Fountain did not include headaches on his list of medically determinable impairments. Tr. 83. Thus, the ALJ's observation that the state agency doctors "did not find headache to be a medically determinable impairment" was accurate.[2] Tr. 27.

The ALJ found, generally, that the determinations of the state agency consultants were persuasive because they were consistent with the record. Tr. 27. Again, the only place the ALJ discussed the state agency consultants' determination that plaintiff's headaches did not constitute a medically determinable impairment is in the context of her subjective symptom statements, which he found were inconsistent with the record. Tr. 26-27. The ALJ cited portions of the record, which presumably also form the basis for his conclusion that the state agency consultants' opinion regarding plaintiff's headaches is persuasive. This is where the ALJ erred.

As the ALJ noted, records from October 2018 indicate that plaintiff had suffered from cluster headaches for ten years. Tr. 1010. In fact, the record is replete with references to cluster headaches and migraines, including a migraine diagnosis. Tr 1571. In late October 2018, plaintiff reported a lengthy headache that lasted for three days. Tr. 1010. In late December 2018, plaintiff reported that her headaches were worse, Tr. 998, and records indicate plaintiff continued to be treated for headaches through 2021. Tr. 1689. The ALJ noted that plaintiff took only Tylenol for her headaches, but the ALJ cites to an isolated chart note from May 31, 2019, Tr. 309, and ignored that plaintiff agreed to try prescription medication for her headaches, Tr. 1010, she was

---

[2] In treating source documentation, Sam Wassman, MD, also did not list headaches as one of plaintiff's medical conditions or opine that plaintiff had any functional limitations due to headaches. Tr. 1744. However, Dr. Wassman wrote: "Unfortunately, [the] primary care physician who has known plaintiff for years retired with very little notice and is not available to give an opinion" and recommended that "[f]or functional and disability assessment, she should get opinion of independent medical examiner." Id.

prescribed a daily dose of topiramate (an anticonvulsant) for "migraine prevention," Tr. 1559-60, 1596, and she was otherwise taking a pain killer, gabapentin, daily as part of her treatment for neck pain. Tr. 808, 851, 865, 891.

The ALJ relies on a February 7, 2019 chart note that states plaintiff only "sometimes gets headaches," but this notation cannot be viewed in isolation or reasonably be construed to indicate that plaintiff's headaches had improved in light of all of the other evidence in the record. Although plaintiff took topiramate daily, she still presented with headaches, Tr. 1651, including "a couple" in the month prior to her hearing. Tr. 47. A primary headache disorder can constitute a medically determinable impairment where it is unresponsive to medication treatment, including anticonvulsants. SSR 19-4P; *Kevin M. v. Comm'r of Soc. Sec.*, No. C19-125 TLF, 2020 WL 503086, at *2 (W.D. Wash. Jan. 31, 2020) (finding the plaintiff's headaches were a medically determinable impairment because he had received multiple diagnoses for his chronic headaches and migraines and his headaches had resisted treatment by various prescription medications and Botox injection).

The Commissioner argues that plaintiff's headache-related sensitivities are not documented in the medical record. To the contrary, medical records indicate that plaintiff's cluster headaches were "typically" triggered by sounds. Tr. 1010. Other chart notes indicate that plaintiff has a "history of HA [i.e., headaches] and difficulties with bright light," "multiple issues with sensory integration" were suspected, and a "trial of variously tinted lenses" was recommended. Tr. 348. Some of the jobs identified by the vocational expert, such as small parts assembler and cafeteria worker, could involve loud noises and bright lights. *See* DOT 706.683-022 (describing small parts assembler job as working around drill presses, milling machines, and other machinery); DOT 311.677-010 (describing cafeteria attendant job to include taking items

7 – OPINION & ORDER

to kitchen and circulating among diners). Therefore, the ALJ's failure to properly assess whether plaintiff's headaches constituted a medically determinable impairment at step two is not harmless.

The Commissioner also observes "the ALJ noted that despite her reported headaches during the relevant period, Plaintiff cared for her 3-month-old grandson as early as September 2020," Def. Br. 5 (citing Tr. 22, 25, 29), and argues that "[w]hen considering Plaintiff's allegations of severe light and noise sensitivities, it was reasonable for the ALJ to find activities, such as those occurring outdoors or those involving loud noises (i.e., caring for a 3-month old), inconsistent with the extent of the limitations Plaintiff alleged." *Id*. But the three pages of the ALJ's decision to which the Commissioner cites do not discuss plaintiff's light and noise sensitivities, and the ALJ did not discredit plaintiff's claims of light and noise sensitivities with the fact that she cares for her grandson. In fact the ALJ recognized plaintiff's testimony that, although she takes care of her grandson, she is limited in what she can do. Tr. 25. The court cannot uphold the ALJ's decision based on a post hoc rationale. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In sum, the ALJ lacked substantial evidence to make a finding that plaintiff's headaches did not constitute a medically determinable impairment, and the error was not harmless. The ALJ also erred in failing to provide clear and convincing reasons for rejecting plaintiff's subjective statements regarding the severity of her headache symptoms. Thus, this case is remanded for the ALJ to reconsider whether plaintiff's headaches pass the de minimis threshold of constituting a medically determinable impairment. If the ALJ determines that plaintiff's headaches constitute a

medically determinable impairment, the ALJ shall reassess plaintiff's subjective symptom statements in determining whether the impairment is severe, reassess the RFC, solicit VE testimony with respect to a hypothetical that includes any additional restrictions, and reevaluate step five.

## CONCLUSION

For the reasons given above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED January 31, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge